# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIM. ACT. NO. 1:19-cr-15-TFM-B |
| | ) |
| LINDA LANCON | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

The Grand Jury for the Southern District of Alabama indicted the defendant, Linda Lancon ("Lancon" or "Defendant") on January 31, 2019. The Indictment charged Lancon with one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, and one count of possession with intent to distribute approximately 30 kilograms of cocaine. *See* Doc. 25. Pending before the Court is the *Defendant's Motion to Suppress Statements and Evidence* (Doc. 47, filed 2/22/19) and the *Government's Response in Opposition to Defendant's Motion to Suppress* (Doc. 51, filed 3/4/19).

The Court held an evidentiary hearing on May 30, 2019. Based on the evidence presented to the Court, arguments of the parties, and for the reasons set forth herein and contained in the Government's Response, the Defendant's Motion to Suppress (Doc. 47) is **DENIED**.

### I. BACKGROUND AND MOTION TO SUPPRESS

The facts of the case are essentially not in dispute as the encounter was recorded and a copy of the video and audio was provided to the Court during the suppression hearing. The crux of the Defendant's argument is that the traffic stop was unreasonably lengthened beyond the scope of the original traffic stop.

On or about January 15, 2019, Saraland Police Officer Austin Sullivan ("Officer Sullivan") saw a tractor with no trailer travelling northbound on Interstate 65. The exterior of the truck was

very clean and freshly painted; however, there was "ghosting" on the side of the tractor where two letters appeared to have been removed from the name of the trucking company. Additionally, other portions of the tractor were rusty from lack of use which contrasted with the clean and newly painted tractor. As Officer Sullivan passed the tractor, he observed that there was no tag displayed on the front of the tractor as required by Alabama law. Therefore he conducted a traffic stop for the tag violation. The tractor did not immediately stop, so Officer Sullivan followed it with his blue lights on until it finally pulled over.

Officer Sullivan approached the vehicle on the passenger side, but Defendant Victor Estrada Rodriguez ("Co-Defendant" or "Estrada") jumped out from the driver's side of the truck to the ground to meet him. Officer Sullivan requested Estrada's license, registration, and insurance. Estrada had trouble locating the relevant documents so Officer Sullivan continued to question him about those documents and explained that he stopped the vehicle for the tag violation. Ultimately, Estrada produced paperwork which showed several companies associated with the vehicle, including one which appeared on the side of the truck "Silient Trucking" and "Resilent Trucking." Further, Estrada produced a document taped to the windshield of the truck that showed the vehicle registered "Lucky 5 Trucking." Additionally, Officer Sullivan noticed a number of personal items in the truck including a house plant and a DVD player.

Officer Sullivan and Estrada went to the patrol car where Officer Sullivan also began checking law enforcement databases on the vehicle, the companies, and Estrada. Eventually Officer Sullivan asked Estrada if he could search the truck to which Estrada agreed. Officer Sullivan also heard back on his inquiry that a person with the same name was wanted on criminal charges from another state with full extradition. Officer Sullivan asked for additional information to see if Defendant Estrada had the same physical characteristics as the wanted subject. Though

Estrada had denied prior arrests in their earlier conversion, Officer Sullivan eventually determined from Estrada that he had been previously arrested. Officer Sullivan then requested, but never received, a portable fingerprint device to confirm whether Estrada was the wanted person.

Around this time, Lt Culley responded as a back-up officer and arrived on the scene with his drug detecting dog. Lt Culley walked his dog around the outside of the truck and the dog gave a positive indication for the odor of narcotics on both sides of the truck near the doors. Officer Sullivan confronted Estrada with the drug dog's positive alert and Estrada admitted everything in the truck belonged to him. At this time, Lt Culley and Officer Sullivan conducted a full search of the truck and found cocaine bundles in a large box behind the passenger's seat. They advised Estrada of his Miranda rights and he admitted to his involvement in smuggling activity.

In sum, the traffic stop lasted a little over one hour. Midway through the traffic stop, Officer Sullivan asked Lancon to get out of the truck to sit in a different police vehicle. She remained there for the rest of the stop.

Lancon filed her motion to suppress and alleges the traffic stop was unreasonably prolonged and therefore ultimately not a constitutionally valid stop. *See* Doc. 47 generally. The Government filed its response on March 4, 2019. *See* Doc. 51. The Government argues the traffic stop was supported by probable cause as the officer witnessed a traffic infraction for the failure to display a tag. The Court convened an evidentiary hearing on the matter on May 30, 2019 and heard testimony from Saraland Police Officer Austin Sullivan. The Court also received several exhibits including the video from the dashcam and audio.

## II. LAW AND DISCUSSION

### A. Standing

It is well established that for a defendant to move to suppress evidence, he must have

standing. *United States v. Eyster*, 948 F.2d 1196, 1208-09 (11th Cir. 1991). A defendant has the burden of showing standing under the Fourth Amendment. *United States v. Brazel*, 102 F.3d 1120, 1147 (11th Cir. 1997). To claim the protection of the Fourth Amendment, an individual must have a "reasonable expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978). A defendant's expectation of privacy must be "personal[]" and "reasonable," and it must have "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 142 L. Ed. 2d 373 (1998) (internal quotation marks omitted). That said, "[s]tanding does not require an ownership interest in the invaded area." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (noting that the Supreme Court has recognized that an overnight guest in a home has a legitimate expectation of privacy in that home).

An individual has standing to challenge a search if "(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (citing *United States v. Segura-Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006). Courts assess on a case-by-case basis the standing of a particular person to challenge an intrusion by government officials into an area over which that person lacked primary control. *Oliver v. United States*, 466 U.S. 170, 191 n. 13, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). Moreover, the Eleventh Circuit has held that where a defendant is neither the owner nor the lessee of the place searched, in order to contest a search, he must "demonstrate a significant and current interest in the property at the time it was searched." *United States v. Miller*, 387 F. App'x 949, 951 (11th Cir. 2010) (citation and quotation omitted).

Here, Defendant Lancon failed to present any evidence at the suppression hearing that she

was anything other than a passenger in the vehicle. The Eleventh Circuit previously held that "a passenger in a private car who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car." *United States v. Lee*, 586 F.3d 859, 864 (internal modifications and citation omitted); *see also United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) ("A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it."). Co-conspirators and codefendants have been accorded no special standing. *Alderman v. United States*, 394 U.S. 165, 172, 89 S. Ct. 961, 965, 22 L. Ed. 2d 176 (1969). Moreover, at this point, the co-defendant Victor Estrada pled guilty without reservation which renders his motion to suppress moot and not an issue for the Court to decide. Even if there were a Constitutional infirmity with the search *vis a vis* Estrada, only Estrada, not Lancon may be heard to complain about the violation.

Further, at no point during the search did Defendant Lancon do anything to object to the search, counter the consent given by Estrada, nor did she assert ownership over the vehicle or its contents. As such, her motion to suppress fails for want of standing.

**B.**     **Fourth Amendment Warrantless Searches**

Even if Lancon could demonstrate standing to assert a suppression issue, the motion still fails because the search, under the circumstances, was reasonable.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. Warrantless searches and seizures are per se unreasonable unless an exception applies. *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967)). A traffic stop is a seizure

within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L.Ed.2d 660 (1979). A traffic stop is a constitutional detention when it is justified by reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968) or probable cause to believe a traffic violation has occurred under *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). *See United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). To determine whether probable cause or reasonable suspicion has been met, the Court must determine whether the officer's actions were reasonable. *See Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62, 134 L. Ed. 2d 911 (1996).

Lancon asserts the officer unconstitutionally prolonged the traffic stop in violation of *Rodriguez v. United States*, --- U.S. ---, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). Lancon does not appear to challenge the initial basis of the *Terry* stop – in that Officer Sullivan stopped the tractor for a tag violation. Rather, Lancon asserts the officer artificially prolonged the stop in order for a K-9 unit to arrive.

The Eleventh Circuit recently addressed *Rodriguez* in two cases – one published and one unpublished opinion. *See United States v. Campbell*, 912 F.3d 1340 (11th Cir. 2019) and *United States v. Burwell*, 763 F. App'x 840 (11th Cir. 2019). In *Campbell*, the Eleventh Circuit held that the proper standard emanating from *Rodriguez* is that "a stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes. *Campbell*, 912 F.3d at 1353. "That is, to unlawfully prolong, the officer must (1) conduct an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Id*. The Eleventh Circuit also noted that *Rodriguez* still permits an officer to conduct the "mission" of the traffic stop and attend to related safety concerns. *Burwell*, 763 F. App'x at 844 (quoting *Rodriguez*). "That mission or purpose

often includes checking the driver's license, attending to safety concerns, searching for outstanding warrants against the driver, and inspecting the vehicle's registration and proof of insurance." *Id*.

The key here is that the Officer Sullivan had probable cause to initiate the *Terry* stop and then did not <u>unlawfully</u> prolong the stop during his investigation of the lack of tag. Officer Sullivan clearly saw the truck driven by the codefendant Victor Estrada where Defendant Lancon was a passenger committed a traffic infraction – specifically the failure to display a license plate. Alabama law requires that

> Every motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license.
>
> Anyone violating the provisions of this section shall be guilty of a misdemeanor and shall, upon conviction, be punished by fine not exceeding $500.00 and, in addition thereto, shall be prohibited from driving a motor vehicle in Alabama for a period of not less than 60 days nor more than six months.

Ala. Code. § 32-6-51.

The traffic infraction was ample justification for Officer Sullivan to briefly stop and detain the truck and its passengers. After the stop began, neither Estrada nor Lancon had documents to show the truck was not stolen. Indeed, the truck markings and the statements of Estrada indicated the truck was either stolen, uninsured, or not properly registered. Further, neither the ownership nor proper registration or insurance were resolved before a trained narcotics dog arrived and alerted on the drugs. A positive alert by a trained canine establishes probable cause for a search of the vehicle. Here, the search pursuant to the alert ultimately revealed a large quantity of narcotics. There is no indication that Officer Sullivan unreasonably prolonged the stop in order to have the narcotics K-9 arrive prior to "mission completion." Rather, the evidence shows that the officer continued to look into the tag violation and ownership of the vehicle. Ultimately, as time passed

and the investigation into the tag violation progressed, Officer Sullivan understandably developed reasonable suspicion that Estrada was involved in criminal activity. The vehicle was registered to Lucky 5 Trucking Company in Illinois (which was nowhere near any of the cities mentioned by Estrada). Estrada also mentioned different company names and registrations for trailers from 2014-2017 – though the truck itself was not pulling a trailer. In sum, neither Estrada nor Lancon provided any documentation establishing they properly lawfully possessed the tractor/truck at issue.

While the traffic stop may have been approximately an hour, there is no indication that the stop was unlawfully prolonged. Rather, the evidence establishes that Officer Sullivan was actively looking into the basis for the original *Terry* stop and as he investigated, reasonable suspicion developed that the vehicle may have been stolen, uninsured, or otherwise involved in illicit activity or that Estrada (the driver) was the subject of an arrest warrant. Questioning of Estrada only heightened those suspicions as his explanations either changed or did not align with the limited paperwork provided on the truck. Ultimately, Estrada consented to the search of the truck, but even without that, the canine drug alert certainly established probable cause for the search which resulted in the discovery of the drugs.

### III. CONCLUSION

For the reasons articulated above, the *Defendant's Motion to Suppress Statements and Evidence* (Doc. 47) is **DENIED**.

**DONE** and **ORDERED** this 20th day of June, 2019.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE